J-A30018-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| M.D.K. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| N.J.L. | : | No. 802 MDA 2019 |

Appeal from the Order Entered April 17, 2019
In the Court of Common Pleas of Susquehanna County Domestic
Relations at No(s):  2013-1525-CP

BEFORE:   DUBOW, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:                **FILED: FEBRUARY 28, 2020**

M.D.K. (Father), appeals the order denying his petition for modification of custody and awarding Father and N.J.L. (Mother) shared legal and physical custody of the parties' son, S.D.K. (Child), born May 2013.  We affirm.

The record reveals the following pertinent factual and procedural history.  Mother and Father were in a relationship, but separated shortly after the birth of Child.  On December 10, 2013, Father filed a petition for custody.  On May 8, 2014, following a hearing, the trial court entered an order granting the parties shared legal custody of Child, Mother primary physical custody, and Father partial physical custody.  Order, 5/8/14.  The order granted Father partial physical custody every other weekend from 6:00 p.m. Friday through

_____

[*] Retired Senior Judge assigned to the Superior Court.

6:00 p.m. Sunday, and two non-consecutive weeks during the summer. *Id.* The order also provided a holiday schedule. *Id.*

On September 7, 2017, Father filed a petition for modification seeking primary physical custody of Child. Pet. for Modification, 9/7/17, at 1. In the petition, Father alleged that Child was removed from Mother's custody by Susquehanna County Children and Youth Services (CYS) and was placed in foster care. *Id.* It appears from the pleadings and testimony that CYS removed Child from Mother's custody after receiving allegations that Mother's father (Maternal Grandfather) sexually abused Child.[1]

By stipulation and order entered November 29, 2017, Mother and Father agreed to share legal and physical custody of Child on a week on/week off schedule. Stipulation and Order, 11/29/17, at 1. The order also directed that Child not have any contact with Maternal Grandfather until Maternal Grandfather participated in a psychosexual risk assessment. *Id.* at 2.

On April 23, 2018, Father filed the instant petition for contempt and modification of the November 29, 2017 custody order. Father alleged that Mother allowed Maternal Grandfather to have contact with Child before undergoing the required psychosexual risk assessment. Pet. for Modification

---

[1] The record contains no detailed information regarding the allegations against Maternal Grandfather, the involvement of CYS, or the results of any of the investigations into the allegations. Although Mother, Father, and another witness briefly referenced the allegations, the trial court noted, "[t]here's really no testimony that the [c]ourt can make any findings with respect" to the allegations that Maternal Grandfather abuse Child. N.T., 4/11/19, at 164. The trial court ultimately determined that the allegations were unfounded. *See* Order, 4/17/19, at 1.

& Contempt, 4/23/18, at 3. Further, Father sought primary physical custody of Child. *Id.* Mother filed a response and counterclaim seeking primary custody of Child. Father withdrew his request for contempt before the hearing on his petition. *See* Order, 2/28/19.

On April 11, 2019, the trial court conducted a hearing on the petition for modification. The trial court heard the testimony of Charmarie Bisel, Child's therapist; Father; Mother; and H.W., Mother's boyfriend.

Relevant to this appeal, Ms. Bisel testified that Child attended some counseling briefly, when he was four, and then began attending sessions twice per month after September 2018. N.T., 4/11/19, at 9.

According to Ms. Bisel, Child reported a history of "some hitting" between Father and his current girlfriend. *Id.* at 26-27, 36-37. Ms. Bisel acknowledged that the numerous breakups and arguing between Father and his girlfriend negatively affected Child. *Id.* at 26. However, she believed that the issues between Father and his girlfriend had improved. *Id.* at 26-27.

Currently, Father takes Child to sessions with Ms. Bisel because the sessions occur during his custodial weeks. *Id.* at 9-10, 32-33. Ms. Bisel asked Mother to bring Child during her custodial time so he could be seen weekly. *Id.* at 33. Mother brought Child to one session but did not bring Child back. *Id.* Ms. Bisel acknowledged that the next session was cancelled due to weather and it was possible that she was supposed to contact Mother to schedule further appointments but failed to do so. *Id.* at 34.

Ms. Bisel diagnosed Child with adjustment disorder with anxiety, noted that Child has some behaviors suggesting ADHD but did not formally diagnose Child with ADHD. *Id.* at 10-11. Ms. Bisel testified that Child "improved a great deal" due to the counseling. *Id.* However, Child remained socially immature and struggled in school. *Id.* at 17-19. Further, Father told Ms. Bisel that Child missed school during Mother's custody time. *Id.* at 19-20.

Ms. Bisel observed that Child loves Mother and Father and wants to spend time with them. *Id.* at 12, 14. However, Child has difficulty with transitions between Mother and Father in a week on/week off schedule. *Id.* at 14.

Ms. Bisel testified that consistency and structure in both homes was important. *Id.* at 14-15, 17. Ms. Bisel believed that Father had Child on a schedule, worked with him on homework, and made sure he got to school regularly. *Id.* Moreover, there were no behavioral problems during Father's custodial time. *Id.* Ms. Bisel could not comment on the situation in Mother's home because Father was the only parent who brought Child to counseling. *Id.* at 15.

As to the allegations of abuse, Ms. Bisel testified that Child continues to struggle with a history of sexual abuse. *Id.* at 11-12. Although Ms. Bisel did not detail the allegations of sexual abuse, she testified that Child stated Mother told Child that one of Mother's former boyfriends, D.G., "lied to us and that it didn't happen." ***See id.***

When asked whether a primary physical custody schedule would be preferable, Ms. Bisel responded:

> I would recommend that—his anxiety, but even more than that, his ADHD symptoms that he—and the anxiety, he needs something really consistent, really stable that he can count on. He needs schedules, he needs the same kind of structure between both parents really. And if that could happen, then that would be fine. I—I don't know if that's happening or not.

*Id.* at 15-16.

Father testified that he has lived in his home for twenty-eight years, and currently resides there with his girlfriend of five years and his brother.[2] *Id.* at 40-42. Father denied any physical violence between himself and his girlfriend. *Id.* at 42. However, he conceded that on a few occasions, Father and his girlfriend fought, and she moved out to live with her father for a few days. *Id.* at 60-61. Father testified that he previously worked as a mason but, at the time of the hearing, he was injured and had applied for social security disability. *Id.* at 45-46. Father had not worked for several years and supported himself with "good family and friends." *Id.* at 80-81. Father testified that when Child is in his care, they engage in activities like going to the trampoline park or riding four-wheelers. *Id.* at 52-53. Father also helps with Child's homework. *Id.* at 51-52.

Father acknowledged that up until the fall of 2017, Mother was the primary physical custodian of Child. *Id.* at 62. However, Father contended

---

[2] Father testified that Mother has a mortgage on the home. N.T., 4/11/19, at 44.

that Mother's life was unstable, observing that Mother had several different boyfriends during Child's life and moved seven times. *Id.* at 59-60. Father also claimed that Child's unexcused absences from school occurred during Mother's custodial time. *Id.* at 55. Father asserted that Child only missed one day of school during his custody time because of a "family matter." *Id.* at 47.

Upon questioning by the trial court about the "family matter," Father stated that "there was stuff that we were dealing with as a family." *Id.* at 68. Father then asserted, "it's none of anybody's business to be honest with you." *Id.* Eventually, Father admitted that he "was having problems with my girlfriend and we got it straightened out." *Id.* at 69. Father testified that the argument was about money, and while Father asserted he and his girlfriend were not "throwing stuff and smashing and bashing," they were "stomp[ing] their feet . . . ." *Id.* at 75.

As a result of the argument, Child missed the bus, and Father could not drive Child to school because his girlfriend took their shared car to work. *Id.* at 69-70. Father claimed that this fight did not occur in the presence of Child because Child was sleeping at the time. *Id.* at 72-73. When Mother's counsel questioned Father about how the argument caused Child to miss school, Father attempted to walk off the witness stand, explaining that counsel was bothering him. *Id.* at 74.

As to the allegations of sexual abuse, Father testified that Child spontaneously came to him "about the sexual assault three times." *Id.* at 83.

He noted, "I want to protect him and I don't feel that he'd been protected very well" by Mother. *Id.*

Overall, Father requested that Child stay with Father, and that the parties could "work out something for visitation." *Id.* at 57. Father contended that Child going to school from one home would be good for Child and that Mother had difficulty getting Child to school. *Id.* at 65. Further, Father testified that it would be better for him to have primary physical custody, in part, because it would allow Child to sleep in the same house and bed every night. *Id.* at 81-83.

Mother testified that she was not currently working due to a back injury that prevented her from bartending. *Id.* at 103, 125-26. Mother testified that she lives in her own home with Child near her current boyfriend, H.W. *Id.* at 99-101, 121-24. Mother noted that H.W. is very good with Child. *Id.* at 100. Additionally, Child is close with Mother's siblings who live in the area. *Id.* at 110. Mother testified that during their time together, she and Child spend time with family, go to parks, and go to the playground. *Id.* at 111.

In an effort to assist Child with his difficulties in school, Mother purchased educational aids, and she and Child do flash cards while eating dinner. *Id.* at 96-97. Mother contended that she provides Child a structured environment. *Id.* at 105.

Mother testified that she would take Child to counseling if recommended. Mother stated that she thought Ms. Bisel would have called to

reschedule the cancelled session, but acknowledged that she should have called Ms. Bisel back when she did not hear from Ms. Bisel. *Id.* at 90, 93-94.

With respect to the missed school days,[3] Mother claimed that Child had two teeth extracted and that this accounted for two missed days of school. *Id.* at 106. Further, Child was sick several times. *Id.* at 106-07, 143-44.

Mother acknowledged instability in her life. While Mother denied that she lived in seven different homes after Child's birth, she conceded that she moved six times, primarily living with different family members. *Id.* at 113-17, 137-41. Mother also acknowledged that she permitted two former boyfriends and her current boyfriend to be around Child. *Id.* at 117. One of her former boyfriends, D.G., stalked her. *Id.* at 119. Mother recalled times when she came home from work to find that D.G. had broken into her house and was sitting on her couch. *Id.* The trial court stated that D.G. was "in and out of this [c]ourt for a very long period of time" and his criminal record included a "sexual assault-type conviction", "things such as burglary," and at least one count of corruption of a minor. *Id.* at 131-32. However, Mother testified that she has been in a relationship with H.W. since the fall of 2018 and had known him for several years. *Id.* at 134.

Mother described her communication with Father as minimal. *Id.* at 88. Mother asserted that Father "throws a temper tantrum" when she attempts to speak with him about Child. *Id.* at 91-93. Mother further testified that she

---

[3] The record indicated that Child was absent from school for six and one-half days. N.T., 4/11/19, at 106.

schedules medical appointments for Child and that Father does not attend. *Id.* at 89. On one occasion, Child had two teeth extracted, but Mother did not inform Father. Mother acknowledged she should have told Father about the procedure. *Id.* at 136. In general, Mother agreed that Father parents Child appropriately and cares about Child. *Id.* at 147.

With respect to the week on/week off schedule, Mother testified that her main concern was related to school. *Id.* at 104. Mother believed that it would be preferable for Child to live in one place during the school week. *Id.* at 145. Mother asserted that she deserved primary physical custody because Child needs stability and Mother provides love and affection. *Id.* at 111-12.

As to the allegations of abuse, Mother asserted that CYS determined the report of sexual abuse against Maternal Grandfather were unfounded, as did the Pennsylvania State Police. *Id.* at 109. Mother testified that Maternal Grandfather took a lie detector test and "the other test as well." *Id.* Mother admitted that she left Child with her grandparents after report of sexual abuse but did not leave Child alone with Maternal Grandfather. *Id.* Mother denied telling Child that D.G. lied about the allegations. *Id.*

H.W., Mother's current boyfriend, testified that he is sixty-four years old, that he and Child engage in activities together, and that he did not believe that Child acted any differently than his now adult sons. N.T., 4/11/19, at 153-158. Further, he testified that Child has appropriate structure at Mother's home. *Id.* at 155-56.

Based upon the testimony presented at the hearing, the trial court made the following findings of fact and conclusions of law with respect to the best interest factors under 23 Pa.C.S. § 5328:

As to the first factor under § 5328(a)(1), the court finds that this factor weighs in favor of Mother. Mother voluntarily agreed to a shared physical custody arrangement with Father in November 2017 after Mother had been the primary caregiver for [Child] over the course of his young life. Mother's decision demonstrated a strong willingness to promote the relationship between [Child] and Father. Conversely, there was little evidence presented as to Father's position regarding promoting and encouraging the relationship between Mother and [Child]. Father now advocates for a custody arrangement where he would have primary physical custody and Mother would have every other weekend. Father's proposal would dramatically reduce Mother's contact with [Child]. As such, this factor weighs in favor of Mother.

As to the second factor under § 5328(a)(2) and (2.1), there was no evidence that S.K. was subjected to any physical or sexual abuse. While there were allegations of sexual abuse by the [Maternal Grandfather], these allegations have been investigated and determined to be unfounded. There was evidence that both parties have exposed the minor child to domestic violence with their respective romantic interests. Father remains in a relationship that [on] occasions involves tumultuous behavior including a recent incident where [Child] missed the school bus as a result of Father and his girlfriend fighting. Mother has likewise been involved in a relationship that resulted in stalking and dangerous behavior when she attempted to leave the relationship. Mother's current relationship is stable and does not have any domestic violence. To the extent that this factor was considered, it weighed slightly in favor of Mother simply because Father remains in a relationship that occasionally results in abusive behavior that may potentially impact upon [Child].

As to the third factor under § 5328(a)(3), as noted in the May 8, 2014 order, Mother was the primary caregiver for [Child] until the parties voluntarily agreed to a shared physical custody relationship in November 2017. Prior to November 2017, Father had periods of partial custody every other weekend, i.e.,

- 10 -

approximately [four] days per month. Thus, this factor weighs in favor of Mother but the weight attributed to this factor is mitigated by the shared physical custody arrangement the parties have followed since November 2017.

As to the fourth factor under § 5328(a)(4), Mother has demonstrated substantial instability in her life. Mother has resided in numerous different residences since her separation from Father. During that period of time, Mother has likewise been involved in several different romantic relationships and she has exposed [Child] to her boyfriends before those relationships had any permanency. One of Mother's relationship[s] involved a particular individual with a substantial criminal record and a long history of drug abuse. When Mother attempted to end this relationship, it resulted in stalking behavior that Mother admitted caused her to become fearful for her safety. Conversely, Father has resided in the same residence since the parties' separation and has maintained the same romantic relationship with his live-in girlfriend for a period of several years. Father admitted that there were occasions when his girlfriend would leave the residence for short periods of time as a result of domestic disputes but she has always returned. As such, this factor weighs strongly in favor of Father.

As to the fifth factor under § 5328(a)(5), the parties both have extended family in close proximity and those family members have been involved in[Child]'s life. As such, this factor is neutral between the parties.

As to the sixth factor under § 5328(a)(6), the parties have no other children. As such, this factor has no applicability to this case.

As to the seventh factor under § 5328(a)(7), [Child] did not testify and the record contains no competent evidence as to [Child]'s preference. As such, this factor was not considered.

As to the eighth factor under § 5328(a)(8), there was no credible evidence that either party has engaged in any parental alienation. As such, this factor was not considered.

As to the ninth factor under § 5328(a)(9), both parties have enrolled [Child] into counseling programs over the past several years. After the allegations of abuse, Mother enrolled [Child] into

a counseling program. Conversely, Father recently placed [Child] into a counseling program as a result of his concerns regarding [Child's] emotional health. [Child's] counselor testified that [Child] has benefitted from his counseling and that Father has been assuring that [Child] attends his counseling sessions. There was a period of time that [Child's] counselor suggested that [Child] attend[] counseling sessions on a weekly basis. Mother complied with this request on one occasion but never followed up to schedule any additional appointments during her periods of physical custody. [Child's] counselor testified that [Child] has improved and the bi-weekly sessions are now sufficient to address his emotional needs. Mother conceded that she should have been more proactive in addressing [Child's] counseling needs. For these reasons, this factor weighs strongly in favor of Father.

As to the tenth factor under § 5328(a)(10), Mother was the primary caregiver until November 2017. Mother continues to provide for all of [Child's] medical and dental needs including recent dental appointments where [Child] had two teeth removed. Both parties have been working with [Child] in connection [with his] education. While [Child] has struggled in kindergarten, both parties have expressed legitimate concern regarding his academic progress, both parties have met with [Child's] teacher, and both parties are working with [Child] to improve his educational improvement. Based upon Mother's historical position as the primary caregiver as well as her continued role in assuring that [Child] receives medical and dental care, the court finds that this factor weighs in her favor.

As to the eleventh factor under § 5328(a)(11), the parties reside approximately [twenty to thirty] minutes apart and both parties reside in the same school district. Thus, this factor weighs in favor of continuation of the shared physical custody arrangement.

As to the twelfth factor under § 5328(a)(12), both parties are unemployed as a result of physical ailments. Father is seeking disability while Mother is hoping to return to the work force upon the improvement of her physical health. At this point, both parties are readily available to care for [Child] and do not require any childcare. This factor is neutral between the parties.

As to the thirteenth factor under § 5328(a)(13), the parties have poor communication skills. The parties largely communicate by text messages not through actual conversations with each other.

The parties need to improve their communication especially as it relates to a shared physical custody arrangement. Given that both parties bear responsibility for their poor communication, this factor is neutral between the parties.

As to the fourteenth factor under § 5328(a)(14), there is no evidence on this record that either party has a current drug or alcohol problem. As such, this factor was not considered.

As to the fifteenth factor under § 5328(a)(15), both parties have physical limitations as a result of injuries. Both parties are physically able to care for [Child]. As such, this factor was not considered.

As to the sixteenth factor under § 5328(a)(16), Father demonstrated during his testimony in the custody hearing difficulty in managing his frustration and/or anger. Father was reluctant to admit during his testimony that he and his girlfriend had a domestic dispute that resulted in [Child] missing school. When asked as to why [Child] missed school, Father stated that it was a "family matter." When the court pressed him as to the reason, Father remained adamant that [Child] missed school because of a "family matter" and he was unwilling to explain what the "family matter" constituted. Only after repeated questioning by the court did Father admit that [Child] missed school because of a domestic dispute between Father and his girlfriend. When defense counsel attempted to delve deeper into what occurred, Father became so frustrated that he attempted to walk off the witness stand and had to be directed by the court to remain put. Father's outburst demonstrated his difficulty in managing his emotions, frustrations and/or anger. As such, this factor weighs in favor of Mother.

Order, 4/17/19, at 1-7 (some formatting altered).

By order dated April 16, 2019, and entered April 17, 2019, the trial court directed, in relevant part, that:

1.    The parties shall have shared legal custody of [Child].

2.    The parties shall have shared physical custody of [Child] on an alternating week basis. The out-of-custody parent shall be entitled to one period of partial custody on Wednesday evening

from 3:00 p.m. until 7:00 p.m. . . . . . The out-of-custody parent shall be responsible for all transportation necessary to effectuate this period of partial custody. . . .

*Id.* at 7.

On May 16, 2019, Father timely filed a notice of appeal and concise statement of errors complained of on appeal.[4] *See* Pa.R.A.P. 1925(a)(2)(i), (b). The trial court issued a statement relying on its order.

On appeal, Father raises the following issues for our review:

1.    Did the trial court abuse its discretion or commit an error of law in its April 16, 2019 Order in that it denies [Father] the primary physical custody of [Child]?

2.    Did the trial court abuse its discretion or commit an error of law in its April 16, 2019 Order in that it awards, grants and orders both parties to have shared legal and shared physical custody of [Child] but denies [Father] actual shared physical custody of [Child] in terms of time spent with each parent?

3.    Did the trial court abuse its discretion or commit an error of law, based upon the testimony of record below, in limiting [Father's] physical custody of [Child] without any evidence or testimony that [Father's] time with [Child] should be restricted or unequal to that of [Mother]?

4.    Did the trial court abuse its discretion or commit an error of law, based upon the testimony of record below, in failing to follow the mandates of 23 P[a.C.S.] § 5328[(a)](10) that the [c]ourt must consider which party is more likely to attend to the daily physical, emotional, developmental and special needs of the child?

_____

[4] Mother has filed a motion to quash Father's appeal, asserting that the certified record does not contain the transcript of the custody trial. Mother also argued that Father failed to file a designation of the contents to be included in the reproduced record and did not include a copy of the transcript in his reproduced record. We note that on January 3, 2020, the trial court transmitted to this Court a supplemental record including the transcript of the custody trial. Accordingly, because the transcript has been included in the certified record, we deny Mother's motion to quash.

5.     Did the trial court abuse its discretion or commit an error of law, in failing to give [] appropriate weight to the testimony of Charmarie Bisel, [Child's] counselor in this case, who stated that [Father] was the more stable of the two (2) parents, that the child is not seeing [Father] enough, and that the custody schedule should be modified to provide [Father] with additional periods of custody?

6.     Were the trial court's conclusions unreasonable as shown by the evidence of record?

7.     Did the trial court abuse its discretion or commit an error of law by failing to enter a custody order that is in the best interest of the child?

Father's Brief at 4-5.

Although Father lists seven issues in his statement of questions involved, Father's brief contains only a single argument section, interspersing bullet points, case law, and conclusory arguments. *See* Pa.R.A.P. 2119(a) (requiring that "[t]he argument shall be divided into as many parts as there are questions to be argued"). For example, Father asserts that the record supports the following conclusions:

> ---An independent counselor was appointed for the minor child in the custody proceedings, Charmarie Bisel, MSW, LSW, who provides counseling for parents and children and is also located in Montrose, Pennsylvania. Her testimony was totally favorable to [Father], with Ms. Bisel noting that [Father] was the more stable party, and that [Mother] often missed counseling sessions for both [Child] and herself. Ms. Bisel testified that [Father] should be provided with additional periods of custody; that [Father] cares deeply about [Child] and desperately wants to spend more time with him and based upon her interaction with [Child, Child] may want the same thing.
>
> ---The [trial c]ourt did not give enough weight to the testimony of [Father] that [Child] disclosed to him that [Maternal Grandfather]

- 15 -

was inappropriately touching him and that [Child] was extremely anxious and uncomfortable around [Maternal Grandfather].

--- The [trial c]ourt did not give enough weight to the testimony of [Mother's] past history of substance abuse and of exposing [Child] to multiple boyfriends.

--- The [trial c]ourt's Order erred in not considering which parent is the most stable and provides the most stable living environment.

--- The [trial c]ourt did not give enough weight to the testimony of [Father] that he was the more stable parent for the minor child, and should be awarded primary physical custody of the minor child.

--- The [trial c]ourt's Order does not constitute a truly shared physical custody schedule.

--- The [trial c]ourt erred in law and abused its discretion in limiting [Father's] physical custody of his minor child without any evidence or testimony that [Father's] time with his minor child should be restricted or unequal to that of [Mother].

*Id.* at 11-12. However, the defects in his brief do not impede meaningful appellate review, and we summarize Father's arguments as follows.

Father contends that the trial court erred in its consideration of the trial testimony and its analysis and weighing of the custody factors resulting in the court failing to grant Father primary physical custody or "actual equal shared physical custody." *Id.* at 14-22. With regard to Ms. Bisel's testimony, Father argues that the trial court ignored her testimony. *Id.* at 7-8, 16-17. Father asserts (1) that Ms. Bisel testified that Father is the more stable party, (2) that Mother often missed counseling sessions for both Child and herself, and

(3) that Ms. Bisel opined that Father should be provided with additional periods of physical custody. *Id.* at 7-8.

Father also argues that the trial court erred in weighing Section 5328(a)(10), which focuses on which party is more likely to attend to the daily physical, emotional, developmental, educational, and special needs of the child, in favor of Mother. Father asserts he has a more stable environment and that Mother has a history of substance abuse, exposed Child to multiple boyfriends, and permitted contact between Child and Maternal Grandfather, who "was under suspicion" of abusing Child. *Id.* at 21.

The remainder of Father's arguments focuses on his contention that the trial court awarded unequal physical custody of Child. *See id.* at 18. Father refers to the former "primary caretaker doctrine" and contends that Mother failed to meet her burden of showing she was entitled to more physical custody of Child than Father. *Id.* at 13-14.

In cases under the Child Custody Act, (the Act), 23 Pa.C.S. §§ 5321-5340, our standard of review is as follows:

> The appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

- 17 -

> ***R.M.G., Jr. v. F.M.G.***, 986 A.2d 1234, 1237 (Pa. Super. 2009)
> (quoting ***Bovard v. Baker***, 775 A.2d 835, 838 (Pa. Super.
> 2001)). Moreover,

> > On issues of credibility and weight of the evidence, we defer
> > to the findings of the trial court who has had the opportunity
> > to observe the proceedings and demeanor of the witnesses.

> > The parties cannot dictate the amount of weight the trial
> > court places on evidence. Rather, the paramount concern
> > of the trial court is the best interest of the child. Appellate
> > interference is unwarranted if the trial court's consideration
> > of the best interest of the child was careful and thorough,
> > and we are unable to find any abuse of discretion.

> ***R.M.G., Jr.***, 986 A.2d at 1237 (internal citations omitted). The
> test is whether the evidence of record supports the trial court's
> conclusions. ***Ketterer v. Seifert***, 902 A.2d 533, 539 (Pa. Super.
> 2006).

***A.V. v. S.T.***, 87 A.3d 818, 820 (Pa. Super. 2014) (some formatting altered).

In addition,

> the discretion that a trial court employs in custody matters should
> be accorded the utmost respect, given the special nature of the
> proceeding and the lasting impact the result will have on the lives
> of the parties concerned. Indeed, the knowledge gained by a trial
> court in observing witnesses in a custody proceeding cannot
> adequately be imparted to an appellate court by a printed record.

***Ketterer***, 902 A.2d at 540 (citation omitted).

In ***M.A.T. v. G.S.T.***, 989 A.2d 11 (Pa. Super. 2010) (*en banc*), we stated

the following regarding an abuse of discretion standard:

> Although we are given a broad power of review, we are
> constrained by an abuse of discretion standard when evaluating
> the court's order. An abuse of discretion is not merely an error of
> judgment, but if the court's judgment is manifestly unreasonable
> as shown by the evidence of record, discretion is abused. An
> abuse of discretion is also made out where it appears from a

review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*Id.* at 18-19 (quotation and citations omitted).

Section 5323 of the Act provides for the following types of awards:

**(a) Types of award.—**After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it in the best interest of the child:

(1) Shared physical custody.

(2) Primary physical custody.

(3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S. § 5323. "Shared physical custody" means "[t]he right of more than one individual to assume physical custody of the child, each having significant periods of physical custodial time with the child." 23 Pa.C.S. § 5322(a). "Primary physical custody" means "[t]he right to assume physical custody of the child for the majority of time." 23 Pa.C.S. § 5322(a).

Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S. § 5338(a). Section 5328(a) sets forth the best interest factors that the trial court must consider. *See E.D. v. M.P.*, 33 A.3d 73, 79-80 (Pa. Super. 2011).

Trial courts are required to consider "**[a]ll** of the factors listed in section 5328(a) . . . when entering a custody order." ***J.R.M. v. J.E.A.***, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original).  With any custody case decided under the Act, the paramount concern is the best interests of the child.  ***See*** 23 Pa.C.S. §§ 5328, 5338.

Section 5328(a) of the Act provides as follows.

**§ 5328.  Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328.

This Court has explained:

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "[S]ection 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody]

factors prior to the deadline by which a litigant must file a notice of appeal." ***C.B. v. J.B.,*** 65 A.3d 946, 955 (Pa. Super. 2013) . . . .

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.,*** 63 A.3d 331, 336 (Pa. Super. 2013) . . . . A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). ***Id.***

***A.V.***, 87 A.3d at 823.

With respect to expert testimony in a child custody case, in ***M.A.T.***, we have noted that

while a trial court is not required to accept the conclusions of an expert witness in a child custody case, it must consider them, and if the trial court chooses not to follow the expert's recommendations, its independent decision must be supported by competent evidence of record. ***See Nomland v. Nomland***, 813 A.2d 850, 854 (Pa. Super. 2002) ("To say that a court cannot discount uncontradicted evidence, however, is merely to rephrase the requirement that a child custody court's conclusion have competent evidence to support it. So long as the trial court's conclusions are founded in the record, the lower court was not obligated to accept the conclusions of the experts.").

***M.A.T.***, 989 A.2d at 19-20.

Following our review of the record, the trial court's order, and Father's arguments, we find that the trial court comprehensively and thoroughly considered and weighed all relevant custody factors. Contrary to Father's arguments, the trial court considered Ms. Bisel's testimony as well as Mother's instability. The trial court found no testimony regarding current drug or

alcohol issues.[5]  Moreover, it considered the allegations of sexual abuse and determined that they had "been investigated and determined to be unfounded."  **See** Order, 4/17/19, at 1-2.  In essence, Father seeks to have this Court re-find facts, re-weigh evidence, and/or re-assess credibility to his view of the evidence.  However,

> [i]t is not this Court's function to determine whether the trial court reached the "right" decision; rather, we must consider whether, "based on the evidence presented, given due deference to the trial court's weight and credibility determinations," the trial court erred or abused its discretion . . . .

**King v. King**, 889 A.2d 630, 632 (Pa. Super. 2005) (citation omitted).

Moreover, Father's contention that the trial court awarded unequal times of physical custody lacks any support in the record.  **See** Order, 4/17/19, at 7 (indicating that the parties would have shared custody on a week on/week off schedule).  Therefore, Father's legal arguments referencing the primary caretaker doctrine and Mother's burdens of proof have no relevance in this case and merit no relief.  **Cf. M.J.M.** 63 A.3d at 338-39 (noting that the amendments to Section 5328(a) abrogated the primary caretaker doctrine to the extent it created "an additional consideration that would tip the scales in favor of the primary caretaker in a situation where the trial court deemed both parents to be fit to act as a primary custodian"); **Ketterer**, 902 A.2d at 539

---

[5] We add that although Father asserts that the trial court failed to consider evidence of Mother's history of drug and alcohol abuse, the record contains no references to Mother's use of drugs or alcohol.

(noting that "[a] party seeking modification of custody arrangements has the burden to show that modification is in the child's best interest" (citation omitted)).

In sum, we conclude that the record supports the trial court's conclusions, and we discern no error of law or abuse of discretion. **_See A.V._**, 87 A.3d at 820. Accordingly, we affirm the trial court's order.

Order affirmed. Motion to quash denied.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:02/28/2020